```
1              IN THE UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF FLORIDA
2                    JACKSONVILLE DIVISION

3

4   UNITED STATES OF AMERICA,     Jacksonville, Florida

5              Plaintiff,      Case No. 3:13-cr-177-J-LSC-JED

6   -vs-                       Thursday, October 3, 2013

7   AARON M. RICHARDSON,       10:33 a.m.

8              Defendant.      Courtroom 5A

9   _____

10

11          DIGITALLY RECORDED INITIAL APPEARANCE
             BEFORE THE HONORABLE JAMES E. GRAHAM
12              UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21
    OFFICIAL COURT REPORTER:
22
             Shelli Kozachenko, RPR, CRR
23           221 North Hogan Street, #185
             Jacksonville, FL  32202
24           Telephone:  (904) 301-6842

25           (Proceedings recorded by electronic sound recording;
                          transcript produced by computer.)
```

1                    <u>A P P E A R A N C E S</u>

2

GOVERNMENT COUNSEL:

3

4          **Mac Heavener, Esquire**
           **Mark Devereaux, Esquire**
           United States Attorney's Office

5          300 North Hogan Street, Suite 700
           Jacksonville, FL  32202

6

7

DEFENSE COUNSEL:

8

9          **James Burke, Esquire**
           Federal Defender's Office
           200 West Forsyth Street, Suite 1240

10         Jacksonville, FL  32202

11         **John Ossick, Esquire**
           Law Offices of John J. Ossick, Jr.

12         P.O. Box 1087
           Kingsland, GA  31548

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    **P R O C E E D I N G S**

2       Thursday, October 3, 2013                    10:33 a.m.

3                          -  -  -

4            COURT SECURITY OFFICER:  All rise.  United States

5       District Court in and for the Middle District of Florida is

6       now in session, the Honorable James E. Graham presiding.

7            THE COURT:  Take your seats.

8            Good morning.

9            MR. HEAVENER:  Good morning, Your Honor.

10           MR. BURKE:  Good morning, Your Honor.

11           THE COURT:  I call Case No. Cr-3:13-177-J-LSC-J3G,

12      the United States of America versus Aaron M. Richardson.

13      The -- let the record reflect that Mr. Richardson is in court

14      along with Mr. Burke, that Mr. Heavener and Mr. Devereaux are

15      here on behalf of the United States Attorney's Office.

16           On September the 25th, 2013, the grand jury for the

17      Middle District of Florida returned an indictment against

18      Aaron M. Richardson.  The indictment consists of 25

19      substantive counts, together with a forfeiture allegation.

20           Mr. Richardson is accused of attempting to murder a

21      United States district judge on or about June 23rd, 2013, in

22      Count One.  That offense carries a maximum possible penalty

23      of 20 years incarceration, together with a ten years to life

24      added for attempted murder.

25           I'm going to let the United States Attorney's

1    Office -- I'm not familiar with this form they prepare on the

2    penalty enhancements, so I'm going to let them announce the

3    penalties for each count as I read them out.

4              MR. HEAVENER:  Yes, Your Honor.

5              Mr. Richardson, the penalty applicable to Count One

6    of the indictment is a maximum term of imprisonment of not

7    more than 20 years followed by a potential consecutive

8    sentence of not more than ten years, a fine of $250,000, or

9    both.

10             Any term of imprisonment then can be followed by a

11   term of supervised release of not more than five years.  If

12   you violate that supervised release, you'll be sent back to

13   prison for an additional three years, as well as the

14   possibility of an additional term of supervised release.

15             There's also a $100 special assessment that's

16   mandatory and due on the date of sentencing.

17             THE COURT:  Count Two charges Mr. Richardson with

18   using, carrying, and discharging a firearm during and in

19   relation to a crime of violence and possessing and

20   discharging a firearm in furtherance of a crime of violence.

21   That offense is alleged to have occurred on or about June the

22   23rd, 2013, in Duval County, Florida.

23             MR. HEAVENER:  Mr. Richardson, if you were found

24   guilty of that offense, you would be required to serve a

25   minimum mandatory term of imprisonment of ten years up to

1   life, and that by law would be required to run consecutive to

2   your sentence in Count One.  You would also be subject to an

3   additional consecutive sentence of up to ten years because

4   you were on conditions of release when that offense took

5   place.  You'd be subject to a fine in the amount of $250,000,

6   or both the imprisonment and the fine.

7         And that violation could subject you to a term of

8   supervised release of not more than five years.  If you

9   violated that supervised release, you could be sent back to

10  prison for an additional five years and face additional

11  supervised release.

12        And, again, there's a $100 special assessment due

13  and payable on the date of sentencing.

14        THE COURT:  Count Three accuses Mr. Richardson of

15  unlawfully possessing a firearm and ammunition by a convicted

16  felon.  This offense allegedly occurred between June 20th and

17  June 25th, 2013, here in Duval County, Florida.

18        MR. HEAVENER:  Mr. Richardson, if you were found

19  guilty of committing that offense, the maximum sentence you

20  would face is a term of imprisonment of not more than ten

21  years, and because you were on release when that offense took

22  place, you would face an additional term of not more than ten

23  years consecutive to that sentence.  You would face a fine in

24  the amount of not more than $250,000, or both imprisonment

25  and the fine.

1          You could be sentenced to a term of supervised

2   release following any incarceration of not more than three

3   years, and if you violated the terms and conditions of that

4   supervised release, you could be sent back to prison for an

5   additional two years, face an additional term of supervised

6   release, and there's also a $100 special assessment due on

7   the date of sentencing.

8          THE COURT:  Count Four accuses Mr. Richardson of

9   possessing a stolen firearm and ammunition between June 20th

10  and June 25th, 2013, in Duval County, Florida.  The firearm

11  in this count and in other counts is alleged to be a Savage

12  Arms .30-06 caliber rifle, together with Winchester

13  ammunition.

14         MR. HEAVENER:  Mr. Richardson, if you were found

15  guilty of the offense charged in Count Four of the

16  indictment, the maximum sentence you would face would be a

17  term of imprisonment of not more than ten years followed by

18  not more than ten years consecutive because you were on

19  conditions of release when the offense took place.  You'd

20  face a fine of not more than $250,000, or both the terms of

21  imprisonment and the fine.

22         You could also be subject to a term of supervised

23  release of not more than three years, and if you violated the

24  terms and conditions of that release, you could be subject to

25  an additional term of imprisonment of not more than two

1  years, face an additional term of supervised release, and

2  there is a $100 special assessment due on the date of

3  sentencing.

4       THE COURT:  Counts Five through Ten accuse

5  Mr. Richardson of making false, fictitious, and fraudulent

6  material statements and representations to special agents of

7  the Federal Bureau of Investigation in connection with an

8  investigation into the attempted murder of United States

9  District Judge Timothy J. Corrigan.  It is alleged that these

10  offenses occurred between June 25 and June 26, 2013, here in

11  Jacksonville, the Middle District of Florida.

12       It is alleged that one false statement occurred on

13  June 22nd, 2013, beginning at 4 p.m., and the false

14  statements were related to the firearms and weapons and

15  various other matters involved in the investigation.

16       MR. HEAVENER:  Mr. Richardson, if you were found

17  guilty of any of the offenses alleged in Counts Five through

18  Ten of the indictment, the maximum sentence you would face

19  for each of those offenses is a term of imprisonment of not

20  more than five years, followed by a consecutive term of

21  imprisonment of not more than ten years because you were on

22  conditions of release when the events took place, a fine of

23  not more than $250,000, or both the imprisonment and the

24  fine.

25       You could be sentenced to a term of supervised

release of not more than three years, and if you violated
that supervised release, you could be sent back to prison for
an additional two years and face additional supervised
release.

      You'd also be required to pay a $100 special
assessment that's mandatory and due on the date of
sentencing.

      THE COURT:  In regard to these counts, I note that
in -- the preamble to the counts allege that these statements
occurred between June 25 and June 26, 2013, but in -- I'm
mistaken.  But then there are the alleged false statements
made beginning -- concerning his activities.

      MR. HEAVENER:  That's correct, Your Honor.

      THE COURT:  All right.  Count Eleven accuses
Mr. Richardson of theft of a firearm from a federally
licensed firearms dealer, allegedly occurring on or about
June 20 and June 21, 2013, in which Mr. Richardson is accused
of stealing a Savage Arms .30-06 caliber rifle from a
licensed firearms dealer, that is, Sports Authority No. 370,
located at 9292 Arlington Expressway, Jacksonville, Florida.

      MR. HEAVENER:  Mr. Richardson, if you were found
guilty of the offense charged in Count Eleven of the
indictment, the maximum sentence you would face would be a
term of imprisonment of not more than ten years, followed by
a consecutive term of imprisonment of not more than ten years

1   because you were on release when the events took place, a

2   fine in the amount of not more than $250,000, or both the

3   imprisonment and the fine.

4          You could be sentenced to a term of supervised

5   release following any incarceration but not more than three

6   years.  If you violated the terms and conditions of that

7   supervised release, you could be sent back to prison for an

8   additional two years and face the possibility of an

9   additional term of supervised release.

10          You'd also be subject to a $100 special assessment

11   that's due on the date of sentencing.

12          THE COURT:  Counts Twelve and Thirteen accuse

13   Mr. Richardson of failure to appear for court hearings.

14   Count Twelve alleges that he failed to appear on June 11th,

15   2013.  Count Thirteen alleged that he failed to appear on or

16   about June 3rd, 2013.

17          MR. HEAVENER:  Mr. Richardson, if you were found

18   guilty of either of the offenses alleged in Counts Eleven or

19   Twelve of the indictment, the maximum sentence you would face

20   is a term of imprisonment of not more than ten years,

21   followed by a consecutive term of imprisonment of not more

22   than ten years because you were on conditions of release at

23   the time of the offense.  You'd face a fine in the amount of

24   not more than $250,000, or both the imprisonment and the

25   fine.

1          You'd be required to serve a term of supervised

2    release following any incarceration of not more than three

3    years, and if you violated the terms and conditions of that

4    supervised release, you could be sent back to prison for an

5    additional two years and face the possibility of an

6    additional term of supervised release.

7          You'd also be required to pay a $100 special

8    assessment due on the date of sentencing.

9          THE COURT:  Counts Fourteen through Nineteen accuse

10   Mr. Richardson of making false statements to a United States

11   probation officer while on release.  It is alleged that these

12   offenses occurred on June 11th, 2013, in a text message; on

13   June 3rd, 2013, in text messages; on February -- or an April

14   the 3rd to April the 4th, 2013, in monthly supervision

15   reports; in -- again, on April 3rd, 2013, and April 4th,

16   2013, in monthly supervision reports submitted; on January

17   30th, 2013, to February 5th, 2013, in monthly supervision

18   report submitted; again on January 30th, 2013, to February

19   5th, 2013, in his monthly supervision report submitted to his

20   probation officer.

21          MR. HEAVENER:  Mr. Richardson, if you were found

22   guilty of any of the offenses alleged in Counts Fourteen

23   through Nineteen of the indictment, the maximum sentence you

24   would face for each of those counts is as follows:  a term of

25   imprisonment of not more than five years, followed by a

1  consecutive term of imprisonment of not more than ten years

2  because you were on release at the time of the offense, a

3  fine of not more than $250,000, or both the imprisonment and

4  the fine.

5       Any imprisonment could be followed by a term of

6  supervised release of not more than three years, and if you

7  violate the terms and conditions of that supervised release,

8  you could be sent back to prison for an additional two years

9  and face the possibility of an additional term of supervised

10 release.

11      You'll also be required to pay a special assessment

12 in the amount of $100, due on the date of sentencing.

13      THE COURT:  Again, in Counts Twenty through

14 Twenty-Four, Mr. Richardson is accused of making false

15 statements to his United States probation officer.  Those

16 offenses are alleged to have occurred -- three offenses are

17 alleged to have occurred on January the 3rd, 2013, in

18 relation to his monthly supervision report for December 2012;

19 another alleged false statement in that same report; an

20 alleged false statement on January the 3rd concerning his

21 monthly supervision report for November 2012.

22      Count Twenty-Three alleges false statements in --

23 from November the 5th, 2012, to November the 8th, 2012, in

24 connection with his monthly supervision report for October

25 2012.

1          And Count Twenty-Four also alleges another false

2   statement between November the 5th, 2012, and November the

3   8th, 2012, in connection with his monthly supervision report

4   for the month of October 2012.

5          MR. HEAVENER:  Mr. Richardson, if you were found

6   guilty of any of the offenses alleged in Counts Twenty

7   through Twenty-Four of the indictment, the maximum sentence

8   you would face is a term of imprisonment of not more than

9   five years, a fine of not more than $250,000, or both the

10  imprisonment and fine.

11         You'd be subject to a term of supervised release of

12  not more than three years, and if you violated the terms and

13  conditions of that supervised release, you could be sent back

14  to prison for an additional two years and face the

15  possibility of an additional term of supervised release.

16         Again, there's a $100 special assessment that would

17  be mandatory and due on the date of sentencing.

18         THE COURT:  In Count Twenty-Five Mr. Richardson is

19  accused of falsely impersonating an officer of the United

20  States on or about March 24th, 2012, in Volusia County.

21         It is alleged that on or about that date, that

22  Mr. Richardson falsely assumed and pretended to be an officer

23  and employee of the United States, acting under the authority

24  thereof, that is, a captain of the United States Navy and the

25  commanding officer of personnel sport, Jacksonville, Florida;

1  that those false statements were made in a letter presented

2  to Bethune-Cookman University.

3          MR. HEAVENER:  Mr. Richardson, if you were found

4  guilty of the offense alleged in Count Twenty-Five of the

5  indictment, the maximum sentence you would face is a term of

6  imprisonment of not more than three years, a fine of not more

7  than $250,000, or both the imprisonment and the fine.

8          You could be sentenced to a term of supervised

9  release following any term of incarceration of not more than

10 one year, and if you violate the terms and conditions of that

11 supervised release, you could be sent back to prison for an

12 additional year and face the possibility of an additional

13 term of supervised release.

14         You'd be required to pay a $100 special assessment

15 that's mandatory and due on the date of sentencing.

16         THE COURT:  To be clear, with regard to this count,

17 Mr. Richardson allegedly represented himself to be a master

18 sergeant in the United States Marine Corps on assignment,

19 utilizing the cover of a student at Bethune-Cookman.

20         Finally, the indictment contains a forfeiture count

21 in which the government seeks to have forfeited the -- a

22 Savage Arms .30-06 caliber rifle, certain Winchester

23 ammunition, and other items set forth therein.

24         Mr. Richardson, you have the right to an attorney.

25 You have a right to have that attorney present with you at

1   all stages of the proceeding.  If you cannot afford an

2   attorney, an attorney will be appointed by the Court to

3   represent you.

4        You are not required to make any statement to any

5   law enforcement officer or to any other person concerning

6   these charges.  If you have already made a statement, you

7   need make no further statement.  If you start to make a

8   statement, you may stop at any time.

9        Do you understand those rights?

10        THE DEFENDANT:  Yes, sir.

11        THE COURT:  Do you -- are you in a position to

12   retain your own attorney, or would you like for the Court to

13   appoint an attorney to represent you?

14        THE DEFENDANT:  Court to appoint one.

15        THE COURT:  All right.  I will appoint an attorney

16   to represent you.

17        You do have the right at any time to retain an

18   attorney of your own choosing with your own funds.  If you do

19   retain an attorney of your own choosing, the attorney who is

20   appointed would be relieved of any further obligation to

21   represent you and the attorney that you retained would assume

22   that representation.

23        Mr. Burke, I have received a motion filed in Case

24   No. 3:08-cr-302(S1) --

25        MR. BURKE:  Yes, sir.

1          THE COURT:  -- filed by you on behalf of the Public

2     Defender's Office indicating you believe there is reason for

3     your -- you and your office to withdraw from that case; is

4     that correct?

5          MR. BURKE:  Due to the allegations in the new

6     indictment, 3:13-cr-177, specifically Counts Thirteen and

7     Fifteen allege failures to appear and false statements to the

8     FBI on his behalf wherein he states that members of our

9     office advised that he should just make up an excuse to -- so

10    he may wish to either call us as witnesses to establish that

11    defense and therefore create a conflict.  I think

12    that certainly the appearance or the actuality of a conflict

13    exists in us representing him further.

14          THE COURT:  All right.  Do you understand that,

15    Mr. Richardson?

16          THE DEFENDANT:  No.

17          THE COURT:  All right.  They -- under the canons of

18    ethics, if an attorney is or may be a witness in a case, then

19    that attorney can no longer represent a party in that case.

20          Mr. Burke has represented that it may be necessary

21    for him or his office to be a witness in this case, either

22    called by you or called by the United States Attorney's

23    Office.  And because of that potential, he and his office

24    have a conflict which prevents him from further

25    representation of you, not only in the original case in which

1  you were serving a term of supervised release, but also in

2  the new indictment which was returned last week in Orlando.

3          And I will grant your motion to withdraw.

4          MR. BURKE:  Thank you, Your Honor.

5          THE COURT:  And because of that conflict and so as

6  to avoid any appearance of partiality which may be exhibited

7  by an attorney normally admitted to practice law in the

8  Middle District of Florida, I am appointing John Ossick, who

9  is seated behind you, as attorney to represent you in the

10 supervised release case and also in the new indictment.

11         Mr. Ossick is an attorney who's licensed to

12 practice in the Southern District of Georgia.  In my mind he

13 is one of the foremost criminal defense attorneys in the

14 state of Georgia, and he will be representing you throughout

15 these proceedings.  He has come here today to meet with

16 Mr. Burke, to meet with the prosecutors, and also to meet

17 with you in this matter.

18         I have some understanding and information that the

19 competency evaluation had not yet been completed in Miami and

20 that Mr. Richardson was inadvertently returned here due to

21 some communication issues between the Bureau of Prisons and

22 the Marshals Service.

23         I am entering an order that he be returned to Miami

24 for the completion of the competency hearing in the original

25 case, and I'm also entering an order that a competency

 1   evaluation be conducted as it relates to the charges in this

 2   case.

 3          So at some -- we have some marshals here.  Do we

 4   know when he may be transported back?

 5          THE MARSHAL:  It's likely, Your Honor, that he

 6   could be sent back in about two weeks.

 7          THE COURT:  All right.  Well, as soon as possible,

 8   if you would have him returned to Miami.

 9          Where are you going to house him between now and

10   then?

11          THE MARSHAL:  Mr. Richardson will be in the Baker

12   County Jail in Macclenny, Florida.

13          THE COURT:  Is D. -- Mr. Ossick, do you know where

14   that is, in the event you need to --

15          MR. OSSICK:  I'm sure I can find it, Your Honor.  I

16   don't presently know where it is.

17          THE COURT:  All right.  Do you have inmates at

18   other facilities, pretrial detainees?

19          THE MARSHAL:  Yes, Your Honor, we do.  This is

20   probably the most beneficial to both.  It's closer to the

21   courthouse.

22          THE COURT:  Do you use D. Ray James?

23          THE MARSHAL:  We do, but there may be a conflict

24   with D. Ray James.

25          THE COURT:  All right.

1          THE MARSHAL:  (Unintelligible.)

2          THE COURT:  Well, I will -- I was trying to do

3   something so that it would be the most convenient for

4   Mr. Ossick to visit with him before he is returned to Miami,

5   if that is necessary.

6          THE MARSHAL:  May I approach, Your Honor?

7          THE COURT:  Yes, sir.

8          Do you want counsel?

9          THE MARSHAL:  No.

10         (Sidebar not recorded.)

11         THE COURT:  All right.  He'll be at Macclenny,

12   Mr. Ossick.

13         MR. OSSICK:  (Unintelligible.)

14         THE COURT:  What is the government's position

15   regarding discovery in this newly indicted case?

16         MR. HEAVENER:  Your Honor, we -- we intend to

17   provide discovery as expeditiously as possible.  Normally I

18   believe our standing order would give us ten business days to

19   provide that discovery.  Unfortunately I'm going to be out of

20   the state next week, so I would say by the following Friday,

21   October the 18th, we should be able to have most of the

22   discovery to Mr. Ossick.

23         THE COURT:  All right.  And we will -- I will delay

24   an arraignment on the case until Mr. Richardson has returned

25   from Miami after his competency evaluations.

1           MR. HEAVENER:  Yes, Your Honor.

2           THE COURT:  Is there anything else on this case at

3   this time?

4           MR. BURKE:  No, Your Honor.

5           MR. HEAVENER:  Nothing from the government, Your

6   Honor.

7           THE COURT:  All right.  Mr. Richardson, did you get

8   a copy of this indictment so that you understand what you're

9   charged with?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  All right.  Do you have any questions

12  about why you're here or what your rights are?

13          THE DEFENDANT:  I have a question.

14          THE COURT:  I don't -- relay it to Mr. Burke so

15  that you don't say anything that might adversely impact you.

16          MR. BURKE:  He's concerned about being in

17  (unintelligible) in the special housing at the Baker County

18  Jail.

19          THE COURT:  All right.  That's something the

20  marshals -- you can talk to the marshals about that, together

21  with the personnel at the Baker County Jail.

22          I do not interfere with the marshals' placement of

23  a pretrial detainee or the rules and regulations imposed by

24  the facility in which that pretrial detainee is housed, so if

25  that is a concern, you can address it with the marshals and

1   they can address it with Baker County, all right?

2          Anything else?

3          MR. BURKE:  No, Your Honor.

4          THE COURT:  There's nothing else --

5          MR. HEAVENER:  Your Honor?

6          THE COURT:  Yes, sir.

7          MR. HEAVENER:  I'm sorry.  There was one matter,

8   and I would just like to clarify for the record.

9          He is -- he is currently detained in the supervised

10  release case, and my understanding is he'll continue to be

11  detained.

12         THE COURT:  He'll continue to be detained pursuant

13  to the order of detention entered in the supervised release

14  case.

15         MR. HEAVENER:  Yes, sir.

16         THE COURT:  All right.  Anything else?

17         MR. BURKE:  No, sir.

18         THE COURT:  All right.  Mr. Ossick, you can -- I'll

19  sign the order appointing you right now in this new case, and

20  I will sign an order appointing you in the supervised release

21  case, and I'm sure that in the -- you could talk to Mr. Burke

22  and get the discovery information provided in that case and

23  all the particulars about that.

24         Do you have any questions, Mr. Ossick?

25         MR. OSSICK:  No, sir.

1          THE COURT:  All right.  We'll be in recess.

2      (The proceedings were concluded at 10:57 a.m.)

3                      -   -   -

```
 1                        CERTIFICATE

 2

 3   UNITED STATES DISTRICT COURT )

 4   MIDDLE DISTRICT OF FLORIDA   )

 5

 6

 7            I hereby certify that the foregoing transcript is a

 8   true and correct computer-aided transcription of my stenotype

 9   notes taken at the time and place indicated therein.

10

11            DATED this 19th day of December, 2013.

12

13

14                          s/Shelli Kozachenko
                            Shelli Kozachenko, RPR, CRR
15

16

17

18

19

20

21

22

23

24

25
```