IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) CASE NUMBER:   3:13-cr-177-LSC-JEG |
| | ) |
| AARON M. RICHARDSON, | ) |
|     Defendant | ) |
| | ) |

**DEFENDANT AARON M. RICHARDSON'S
MOTION TO SUPPRESS**

COMES NOW, AARON M. RICHARDSON, Defendant in the above-styled action, by and through his undersigned counsel of record, and files this Motion to Suppress and in support thereof shows the Court the following:

Mr. Richardson is charged in a twenty-five-count indictment with: Attempted Murder of a United States District Judge; Using, Carrying, and Discharging a Firearm During and in Relation to a Crime of Violence and Possessing and Discharging a Firearm in Furtherance of a Crime of Violence; Possession of a Firearm and Ammunition by a Convicted Felon; Possession of a Stolen Firearm and Ammunition; False Statements to the Federal Bureau of Investigation; Theft of a Firearm from a Federally Licensed Firearms Dealer; Failure to Appear for a Court Hearing; False Statements to the United States Probation Office While on Release; False Statements to the United States Probation Office; Falsely Impersonating an Officer of the United States; and Forfeiture.

On June 23, 2013, there was an attempt upon the life of United States District

Judge Timothy J. Corrigan.

**Searches of Residence**

During the course of the investigation by law enforcement officials subsequent to the attempt on the life of the Judge, attention focused on Aaron Richardson, who was on supervised release in connection with a prior offense that had been before Judge Corrigan.  According to materials disclosed in the discovery process, on June 25, 2013 officers were attempting to locate Mr. Richardson, who was wanted on a warrant for failure to appear in connection with a proceeding related to a prior charge of arson.  After reviewing law enforcement records, the officers sought Mr. Richardson at apartment 2519, 6710 Collins Road, Jacksonville, Florida and were advised by an apartment management employee that Mr. Richardson did, in fact, reside there.

Law enforcement officers attempted a pretextual maintenance call at the residence and then after receiving no response to knocks, breached the door and began a search for Mr. Richardson, which included the bedroom later determined to be the one used by him.  After the initial sweep, law enforcement officers suspected Mr. Richardson was hiding behind some hanging clothes in a closet associated with a different bedroom and with the assistance of a K-9 unit found and arrested Mr. Richardson.

During a search subsequent to the arrest of Mr. Richardson, the officers seized a bolt action rifle, ammunition, and other items from Mr. Richardson's bedroom.  Mr. Richardson had never been observed in this room by law enforcement nor were any of the seized items ever seen in close proximity to Mr. Richardson.

Mr. Richardson, an adult male, had resided with his mother and younger brother at the apartment since the end of April, 2013.  The apartment has three bedrooms and Mr. Richardson occupied one bedroom and stored his personal belongings in his own room.  Further, Mrs. Richardson advised the apartment management that Mr. Richardson would reside with her on a temporary basis as a student.  The management said they would "*add his name temporarily*".  (Emphasis added.) (July 24, 2014 grand jury testimony of Sharon Richardson:  page 9, line 20-23 (Bates Number 00377); page 11, lines 1- 13 (Bates Number 00379) ) Mr. Richardson came and went at his leisure.  (July 24, 2014 grand jury testimony of Sharon Richardson:  page 62, lines 2 - 12 (Bates Number 00430))  Further, Mr. Richardson had access to the common areas of the apartment such as the kitchen, living room, and bathroom.

As a result of the two searches, tangible evidence was seized from Mr. Richardson's bedroom where he had a legitimate expectation of privacy.  The tangible evidence was obtained as a result of an illegal search and seizure in violation of the rights of Mr. Richardson in violation of the Fourth Amendment of the Constitution of the United States.

Mr. Richardson was affected by the violation of his constitutional rights in that he presently stands charged with several felonies and it is expected that the government will seek to introduce evidence at trial concerning these searches and the items seized.

**Expectation of Privacy**

The right to challenge a search or seizure as a violation of the Fourth Amendment turns on "whether the person who claims the protection of the amendment has a

legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 430, 58 L.E.2d 387(1978)

Mr. Richardson has standing to challenge the search of his bedroom and the seizures because he was residing in the apartment and as such had a legitimate expectation of privacy. *United States v. Oscar Torres and Daniel Narvaez*, 705 F.2d 1287(11th Cir 1983) wherein the Defendants established a legitimate expectation of privacy in the house owned by McLaughlin, which was searched.

> "Torrez and Narvaez were McLaughlin's house guests . . . they enjoyed, by McLaughlin's own admission, unrestricted access to all parts of the house. They ate, slept, and stored their personal belongings in the house. In short, they adopted McLaughlin's residence as their own and thus acquired a legitimate expectation of privacy that is 'recognized and permitted by society". . . . While they did not have keys to the house , Torres and Narvaez were much more than casual visitors or mere transients. They enjoyed unrestricted access to at least the common areas of the house, . . . They kept their personal belongings in the house and had been there for two days at the time of the arrest."

In the present action, Mr. Richardson had resided at the residence for several months prior to the searches and seizures. He ate and slept at the apartment and stored his personal belongings in his bedroom, which he did not share with anyone. Mr. Richardson came and went as he pleased and he had access to the common areas of the apartment. And, as per Mrs. Richardson's sworn statement, the apartment management, "*They said we'll just add his named temporarily.*" (Emphasis added.) (July 24, 2014 grand jury testimony of Sharon Richardson: page 11, lines 7-8 (Bates Number 00379)) "The expectation of privacy in a private residence and its appurtenant area is one that society has long recognized as justifiable and legitimate." *Id.*

Mr. Richardson's residing in the apartment and his exclusive use of a bedroom establishes both a subjective and objectively reasonable expectation of privacy in the places searched. *Katz v. United States,* 389 U.S. 347(1967); *United States v. Salvucci*, 448 U.S. 83(1980)

In the case of *Holmes v. Kucynda*, 321 F.3d 1069, 1082 (11th Cir. 2003), "search incident to arrest" was well defined:

> "A warrantless search is *per se* unreasonable under the Fourth Amendment unless it falls within one of several well-delineated exceptions. *Mincey v. Airzona*, 437 U.S. 385, 390, 98 S.Ct. 2408, 57 L.Ed.2d 290(1978) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576(1967) A search incident to an arrest is one of these exceptions and is designed to ensure the protection of law enforcement officers as they conduct an arrest. *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) "When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise the officer's safety might well be endangered, and the arrest itself frustrated." *Id.* at 762-63, 89 S.Ct. 2034. Under the same rationale , the Supreme Court in *Chimel* further authorized officers to search for and seize evidence in the immediate surrounding area "into which an arrestee might reach in order to grab a weapon or evidentiary items." *Id.* at 763, 89 S.Ct. 2034. A search incident to arrest may extend into the immediately surrounding area because "[a] gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested." *Id.* However, the "search incident to arrest" is a limited exception; it "places a temporal and a spatial limitation on searches incident to arrest, excusing compliance with the warrant requirement only when the search 'is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest.'" *New York v. Belton*, 453 U.S. 454, 465, 101 S.Ct. 2860, 69 L.Ed2d 768(1981)(citations omitted.) Thus, officers may only search areas "within [the arrestee's] immediate control" construed as "the area from within which he might gain possession of a weapon or destructible evidence." *Chimel*, 395 U.S. at 763, 89 S.Ct. 2034. As the Court stated, '[t]here is no

> comparable justification, however, *for routinely searching any room other than that in which an arrest occurs* - or, for that matter for searching through all the desk drawers or other closed or concealed areas in that room itself. *Id.*" (*Emphasis added*.)

As a resident of the apartment, Mr. Richardson had a legitimate expectation of privacy and therefore can claim the protection of the Fourth Amendment. The evidence seized in the warrantless search of his bedroom should be suppressed.

**Cell Site Information**

Mr. Richardson contends that the production of cell site information in this case constitutes a search under the Fourth Amendment and thus required probable cause and a search warrant. The disclosure materials furnished to defense counsel demonstrate that cell site information was gathered relating to telephone number XXX-XXX-6146. (Bates number 01558 - 01568). These materials attempt to depict the location of the aforementioned telephone allegedly used by Mr. Richardson on specific dates and times. It is believed that these conclusions are based upon telephone records that the government obtained pursuant to the Stored Communications Act, 18 U.S.C. § 2703(c) and (d), which do not require probable cause, but only a showing that there are reasonable grounds that the records or information sought is relevant to an ongoing criminal investigation as opposed to being obtained by a warrant. Additionally, it is believed that similar records requests may have been made for additional phone numbers.

Mr. Richardson objects to the admission of the evidence of the cell site location information and argues that the obtaining of that evidence violated his constitutional rights under the Fourth Amendment. That Amendment provides that "no warrants shall

issue, but upon probable cause, supported by oath or affirmation . . . " U.S. Const. Amend. IV.  It is a "basic principle of Fourth Amendment law" that searches and seizures without a warrant "are presumptively unreasonable. *Groh v. Ramirez*, 540 U.S. 551, 559(2004)

It is anticipated that the information concerning the telephone and which cell towers and the locations used or activated will be used to formulate conclusions as to the geographic location of the phones at various times.  And, the government may seek to introduce this information into evidence at Mr. Richardson's trial.

Mr. Richardson is mindful of the en banc decision of the Eleventh Circuit Court of Appeals in *United States v. Quartavious Davis*, No. 12-12928, (11th Cir. May 5, 2015), which is adverse to this claim.  Additionally, Mr. Richardson is aware of other authorities' holdings, some of which reach a different conclusion as to this issue. *United States v. Graham*,(4th Cir. 2015) and *In re: United States*, 724 F.3d 600(th Cir. 2013).

WHEREFORE, Mr. Richardson requests that a hearing be held on this his Motion to Suppress and the evidence obtained by virtue of the aforementioned illegal searches and seizures be suppressed and that the United States Attorney, his agents, police officers, and any other witnesses called by the government to testify against Mr. Richardson in the above-styled case be enjoined and restrained from mentioning, alluding to, identifying, or otherwise calling the attention of the jury to the existence of said illegally seized items.

Respectfully submitted, this 12th day of August 2015.

*s/John J. Ossick, Jr.*
Georgia Bar Number 555150
JOHN J. OSSICK, JR., P.C.
Post Office Box 1087
Kingsland, Georgia 31548
Telephone:  912-729-5864
Facsimile:  912-729-2230
E-mail: ossick@tds.net

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) CASE NUMBER:   3:13-cr-177-LSC-JEG |
| | ) |
| AARON M. RICHARDSON, | ) |
|     Defendant | ) |
| | ) |

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served all parties in this case in accordance with the directives from the Court Notice of Electronic Filing ("NEF"), which was generated as a result of electronic filing.

This 12th day of August, 2015.

                                              *s/John J. Ossick, Jr.*
                                              Georgia Bar Number 555150
                                              JOHN J. OSSICK, JR., P.C.
                                              Post Office Box 1087
                                              Kingsland, Georgia 31548
                                              Telephone:  912-729-5864
                                              Facsimile:  912-729-2230
                                              E-mail: ossick@tds.net